DAVIS & EAGAN MACHINE TOOL CO. *v.* SOUVENIR
WHEEL CO.

SETTLEMENT—WARRANTY OF MACHINERY.

Where the vendor of machinery, sold under a warranty that it
would do a specified amount of work, which the purchaser
claimed was not fulfilled, convinced the latter that the oper-
ative, and not the machine, was at fault, and thereafter,
without any fraud or concealment, effected a settlement upon
terms suggested by the purchaser, making certain concessions
as to freight charges and terms of credit, such settlement
was held conclusive in an action on a note given by the
purchaser pursuant thereto.

Error to Kent; Adsit, J.  Submitted October 6, 1897.
Decided October 25, 1897.

*Assumpsit* by the Davis & Eagan Machine Tool Com-
pany against the Souvenir Wheel Company and Willis J.
Perkins upon a promissory note.  From a judgment for
plaintiff, defendants bring error.  Affirmed.

*Wolcott & Ward*, for appellants.

*Fletcher & Wanty*, for appellee.

HOOKER, J.  The appellants, having purchased from
the plaintiff a quantity of machinery for the manufacture
of bicycles, to the amount of $2,000 in value, defended an
action brought for the unpaid portion of the purchase
price, amounting to about $700, for which they had given
their note, upon the claim that a hub machine and drill
press (being a portion of said machinery) did not conform
to the warranty upon which they were bought.  The
jury found a verdict for the plaintiff, and, as "the only
errors assigned on the admission or rejection of testimony
relate to the question of damages," it is obvious that the
case must turn here upon the correctness of the charge.

The warranty upon the hub machine was that it would form 80 hubs in 10 hours. As to the drill press, there was no warranty, except the implied one that it should be suitable for the purposes for which it was made or purchased. The drill press first sent was not satisfactory, and the defendants were unable to make the specified number of hubs upon the hub machine. After some correspondence the plaintiff sent its representative to the defendants' factory, upon complaint that the machines would not do the work expected, and the request that it should send a man at the plaintiff's expense if defendants' statement was correct, and, if not, the defendants should stand the expense. This man, Mr. Chard, succeeded in convincing the defendants that the hub machine would do the work represented, when supplied with sufficient power and a proper operative; and a new drill press was sent in place of the first one. The following correspondence shows the situation:

"CINCINNATI, January 23, 1896.
"Messrs. PERKINS & CO.,
        "Grand Rapids, Mich.
    "Gentlemen: We are in receipt of your esteemed favor of the 20th, and are pleased to note that the hub machine is now working satisfactorily, and also that the drill press is working properly so far as the power feed is concerned. In regard to the noise of the gears, will say that we propose to get you out a new set of back gears, which we will get to you in a few days, with instructions as to how to fit them up.
        "Yours truly,
            "DAVIS-EAGAN MACHINE TOOL CO.
                "B. B. QUILLEN, Sec'y."

"GRAND RAPIDS, MICH., 2–8, '96.
"LODGE & DAVIS MACHINE TOOL CO.,
                "Cincinnati, O.
    "Gentlemen: We have received the new drill press, and have ordered the old one returned to you. We have credited your account with the amount of Mr. Chard's expenses, and inclose you herewith our debit memorandum for freight paid on various pieces of machinery purchased of you, which we believe you will find correct. It is our

understanding of the order that the various machines were to be delivered f. o. b. cars Chicago, and we instructed that they come forward in the car load of machinery which we had shipped from Chicago. If they had been included with the car load, we would not have had to pay any more for the car, as we had to pay for a car load anyway, even though we did not have sufficient machinery in the car to make the minimum weight charged for. It was no fault of ours that you were not enabled to make delivery of the machines in time to be included in our car load, and we feel that you will have no hesitancy in passing to our credit the amount of freight charges we have been obliged to pay in consequence of your delay. We inclose you our check in settlement of balance due after crediting your various invoices, and charging you with payments made, freight, etc. We were obliged to do considerable work on the countershaft to the hub machine before it was in proper shape for work. However, inasmuch as you have treated us so nicely regarding the drill press, and in sending Mr. Chard here, we won't make any charge for said work.

"Trusting that the settlement inclosed herewith will be perfectly satisfactory to you, and that we may receive your acknowledgment of same in full settlement of all demands to date, we remain,

"Yours, respectfully,

"PERKINS & CO., by EVERHART.

"P. S. We have a damage claim for delays, which we will withdraw, provided this settlement is accepted.

"GRAND RAPIDS, MICH., Feb'y 3, 1896.

"LODGE & DAVIS MACH. TOOL CO., Cincinnati, O.:

| Date. 1896. | Payments. | Debits. | Credits. | 212 | Date. 1895. |
|---|---|---|---|---|---|
| Jan'y 16 | Cash | $500 00 | $375 00 | By Inv. | Sept. 30 |
| 20 | Notes | 325 00 | 50 00 | " | Oct. 10 |
| 20 | " | 325 00 | 700 00 | " | Nov. 18 |
| 20 | " | 700 00 | 875 00 | " | " 26 |
| | | | | , | 1896 |
| Feb'y 3 | Inv. freight | 31 51 | 23 50 | " | Jan. 25 |
| | | $1,881 51 | $2,023 50 | | . |
| | | | 1;881 51 | | |
| | | | $141 99 Bal. your due. closed." | | Check in |

Letter dated February 10, 1896, to Perkins & Co., read:

"CINCINNATI, O., February 10, 1896.
"Messrs. PERKINS & Co.,
      "Grand Rapids, Mich.
   "*Gentlemen:* We are in receipt of yours of the 8th, inclosing check for $141.99, which we have placed to your credit in full of account. This is entirely satisfactory, and please accept our thanks for same.
          "Yours truly,
               "DAVIS-EAGAN MACHINE TOOL CO.
                "B. B. QUILLEN, Sec'y."

Mr. Chard left the defendants' factory about January 20th, and defendant Perkins testified that:

"I cannot state what day I commenced to find fault after the 8th day of February, but that machinery acted badly from the time Mr. Chard left to the time we quit making hubs on it. I cannot tell you the day when I first notified anybody that it was commencing to act badly. The letters are the best evidence of the time and date. I know at the time the note came due I notified them by telegram."

The notes were dated January 20, 1896, as shown by the statement accompanying defendants' letter. The first note, for $325, was paid at maturity. On April 24, 1896, the defendants wrote the following letter:

                  "GRAND RAPIDS, MICH., 4–24–96.
"LODGE & DAVIS MACHINE TOOL CO.,
          "Cincinnati, Ohio.
   "*Gentlemen:* The note of $325 due the 23d was paid by us yesterday, but we are short of funds, and desire to have an extension of $225. We therefore inclose you note of $225, and desire that you send us check for the same. We trust that you will kindly accommodate us in the extension called for.
   "There is a gentleman here in the city by the name of Burnett. We do not know his local address. He worked for some time for the Fox Machine Co. as foreman. We met him on the street recently, and he stated that he was expecting to start a bicycle factory; that he had the capital enlisted, and proposed manufacturing a large number

of wheels next year. We do not know whether his factory will be here or elsewhere. Rumor has it that he is going to open in Bay City. A letter addressed to the Fox Machine Co. should be forwarded by them to him, although we will not guarantee that they would accommodate you.

"Respectfully yours,
"PERKINS & CO.

"Note inclosed."

Compliance with this request being refused, the matter rested until the maturity of the $700 note, when the following letters passed between them:

"CINCINNATI, O., June 25, 1896.

"The SOUVENIR WHEEL CO.,
"Grand Rapids, Mich.

"*Gentlemen:* We wired you this morning that, if protested note was not paid immediately, we would place the account in the hands of our attorneys. We note your remarks to the National City Bank, giving reasons why you do not pay this note, but will say the reasons are only given for the purpose of avoiding payment of the note. Your machine is the same as has been furnished to all our customers, and, if it is not producing as many hubs as it should, it is the fault of the operator, and not of the machine. There is nothing stated in the order about a guaranteed number of hubs, and, if there was any verbal guaranty made, you, of course, are aware of the fact that it would have nothing to do with the case, as, where there is a written contract, the verbal agreement is not considered. We have had several deals with your company, all of which have caused us more or less trouble. We wish to state again that, if the note is not paid, we will enter suit immediately and take out the machines.

"Yours truly,
"DAVIS-EAGAN MACHINE TOOL CO.
"B. B. QUILLEN, Sec'y."

Nowhere in the record does it appear that complaint was made of the second drill press.

Error is assigned upon the failure of the court to give defendants' fifth request, reading as follows, viz.:

"If you find that the so-called settlement of February 8th related to the delay in furnishing machines, and to

other matters, and not to the failure of the hub machine
to do the warranted amount of work, and if you find that
at that time the defendants had not had reasonable time to
test the capacity of the hub machine, then the so-called
settlement would not affect the rights of defendants to
claim damages for the failure of the hub machine, if, after
fairly testing same, they found it had not complied with
the warranty."

The following instruction was given:

"If the hub machine furnished to the defendants by
plaintiff would, with a proper operator and sufficient
power, 'form 80 hubs in 10 hours from bar,' it satis-
fied this guaranty, and no deduction can be made in your
verdict on account of the hub machine. If you find that
after the machine had been received by the defendants,
and they had a fair opportunity to test it, plaintiff sent
an agent here, who put the machine in order, so that it
was capable of doing the work warranted, and the de-
fendants thereafter accepted the machine, having had a
fair opportunity to test it, and made no complaint until
the note sued upon in this case became due, then your
verdict should be for the plaintiff for the amount of the
note, with interest. If you should find from the evidence
that the hub machine was not capable of forming 80
hubs in 10 hours, and that when the witness Chard was
here in January, 1896, he did not adjust it to the satisfac-
tion of the defendants, and you find that the defendants
did not accept the machine, and found no fault with it
until after this note became due, and thereafter found
that the machine did not comply with the warranty, and
the defendants had not accepted it as complying with the
warranty, the damages must be the difference between the
contract price of the machine, which was $875, and the
value of the machine as it was delivered to the defendants."

The judge also instructed the jury that:

"There is one other point in this case. The evidence
shows that a proposition of settlement was made by the
defendants on the 8th day of February, 1896, in which,
in place of giving half cash on delivery of the machine,
and the balance in two notes of three and four months
each, they sent three notes to the plaintiff,—the one in
suit being one of them,—and a check for $141.99, with a
letter in which they said that 'we have a damage claim

for delays, which we will withdraw provided this settlement is accepted;' and on the 10th of February the plaintiff wrote the defendants that it accepted the settlement, and said it was satisfactory.   This settlement is conclusive, unless there was some fraud or concealment on the part of the plaintiff; and, if there was no fraud or concealment in this settlement, then it is binding on the defendants, and your verdict must be for the amount of the note, with interest from its date at 6 per cent., as already stated.   The defendants were entitled to a reasonable time to test the machinery after Mr. Chard had put it in order at the time of his visit here, in January, I think it was; and if they found after that, and after this settlement, that Chard had deceived them, and that this settlement was based upon what they believed then to be true, which was not true, in fact, by reason of some deception that Chard practiced upon them, or some other agent of the plaintiff, then, if such were the fact, and within a reasonable time they repudiated the settlement by reason of it,—notified the plaintiff of their claim,—they would not be bound; otherwise they are.

"*Mr. Wolcott:* Just one word, your honor.   (Mr. Wolcott talks with the court.)

"*The Court:* Mr. Wolcott informs me, gentlemen, that the defendants make a claim for damages on account of the drill press.   I had said that I did not understand that the defendants did make any such claim, because the drill press was not mentioned in these requests furnished me to charge the jury; but he informs me that he used the word 'machinery' here, and did not name it as 'drill press,' and that he makes a claim for damages.

"*Mr. Wanty:* I think you charged the jury, though, that, under the undisputed facts in regard to that, they could not recover, did you not?

"*The Court:* As I understand the facts to be, yes, if there was an exchange made.

"*Mr. Wanty:* There was an exchange, and you charged the jury, if the drill press was not satisfactory, it was the duty of the defendants to notify the plaintiff, and they did not.

"*The Court:* They made no claim?

"*Mr. Wanty:* No."

We are of the opinion that the defendants have no just cause for complaint.   The settlement alluded to was made upon concessions by the plaintiff which it was not under

obligation to make, in respect to freight charges and the terms of credit. There is nothing in the case from which the jury could justly find fraud or concealment by the plaintiff, and the judge might properly have directed a verdict for the plaintiff.

The judgment is affirmed.

The other Justices concurred.